# <u>VOLUNTARY LABOR ARBITRATION</u>

## BETWEEN:

## HARRISON COUNTY MINE
## (MURRAY AMERICAN ENERGY)
## and
## UNITED MINE WORKERS
## OF AMERICA
## DISTRICT 31, LOCAL NO. 1501

CASE NO. 16-31-18-074
GRIEVANT: SHANNON RIEGEL, ET AL.
FINALITY OF SETTLEMENT
ARTICLE XXIII: SETTLEMENT OF DISPUTES

### OPINION AND AWARD

ARBITRATOR:     THOMAS L. HEWITT
HEARING DATE:  MAY 10, 2018
AWARD:       JUNE 7, 2018

VIA EMAIL – HARD COPY TO FOLLOW

Exhibit A

## APPEARANCES

### FOR THE COMPANY

| | |
|---|---|
| KENNETH R. ELLER | MANAGEMENT CONSULTANT |
| SCOTT MARTIN | GENERAL MANAGER HARRISON COUNTY MINE |
| CHRISTOPHER FAZIO | HUMAN RESOURCES SUPERVISOR HARRISON COUNTY MINE |
| BRADY WEST | LABOR RELATIONS COORDINATOR MURRAY AMERICAN ENERGY |

### FOR THE UNION

| | |
|---|---|
| MICHAEL PHILLIPPI | UMWA REPRESENTATIVE DISTRICT 31 |
| MIKE SHEARER | LOCAL 1501 PRESIDENT |
| CHRIS YANERO | FORMER LOCAL 1501 PRES. |
| RYAN COTTRELL | LOCAL 1501 VICE-PRES. |
| MATT MILLER | LOCAL COMMITTEEMAN |
| ANN MARTIN | LOCAL COMMITTEEMAN (w) |
| PERRY HEFLIN | LOCAL COMMITTEEMAN |
| JOSH WEAVER | LOCAL MEMBER (w) |
| CHRIS SHRIVER | LOCAL COMMITTEEMAN/ GRIEVANT (w) |
| SHANNON RIEGEL | LOCAL MEMBER/GRIEVANT (w) |
| MARK EAKLE | LOCAL MEMBER/GRIEVANT |
| TRAVIS DALTON | LOCAL MEMBER/GRIEVANT |
| JEFF HAYES | LOCAL MEMBER/GRIEVANT |
| MARTY CAPRAL | LOCAL MEMBER/GRIEVANT |

GRIEVANTS FOR MULTIPLE GRIEVANCES ON THE SAME ISSUE:

JASON HOBBS
MATTHEW WOODS
COREY HARRIS
LEE EDGELL
KEVIN CARSON
JOHN TEDROW
JEREMY METHENY
THOMAS BOWEN
RICK NAZELRODT
JASON HARBERT
NICK STATLER
DONALD RILEY
LEVI McBEE
DAVID McCOY
AUSTEN DEWITT
TIM JESSEMAN
JOHNNY WEEKLEY
BRIAN POINDEXTER
TOM MUSGROVE
RUDY CURRICO
DAVID RAINES
BRANDON STOTTLEMIRE
MATT SERIAN

MURRAY AMERICAN ENERGY        CASE NO. 16-31-18-074        THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                                                    JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

## PERTINENT CONTRACT LANGUAGE

### NATIONAL BITUMINOUS COAL WAGE AGREEMENT OF 2016

### Article I--ENABLING CLAUSE

THIS AGREEMENT made this 15th day of August, 2016, between the coal operators and associations signatory hereto, as parties of the first part (each coal operator which is a signatory hereto being called "Employer") and the International Union, United Mine Workers of America (hereinafter called "Union"), on behalf of each member thereof, as party of the second part, covers all of the bituminous coal mines described in Article IA, Section (f), owned or operated by said first parties. This Agreement carries forward and preserves the terms and conditions of all the various District agreements executed between the United Mine Workers of America and the various operators and coal associations subject to the terms and conditions of this Agreement and as amended, modified and supplemented by this Agreement as herein set out.

This Agreement shall be binding upon all signatories hereto, including those Employers which are members of signatory associations, and their successors and assigns. In consideration of the Union's execution of this Agreement, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement. Immediately upon the conclusion of such sale, conveyance, assignment or transfer of its operations, the Employer shall notify the Union of the transaction. Such notification shall be by certified mail to the Secretary-Treasurer of the International Union and shall be accompanied by documentation that the successor obligation has been satisfied. Provided that the Employer shall not be a guarantor or be held liable for any breach by the successor or assignee of its obligations, and the UMWA will look exclusively to the successor or assignee for compliance with the terms of this Agreement.

WITNESSETH: It is agreed that this contract is for the exclusive joint use and benefit of the contracting parties, as defined and set forth in this Agreement. It is agreed that at operations covered by this Agreement the United Mine Workers of America is recognized herein as the exclusive bargaining agency representing the Employees of the parties of the first part. It is further agreed that as a condition of employment all Employees at operations covered by this Agreement shall be, or become, members of the United Mine Workers of America, to the extent and in the manner permitted by law, except in those exempted classifications of employment as hereinafter provided in this Agreement. This provision does not change the rules or practices of the industry pertaining to management. The Mine Workers intend no intrusion upon the rights of management as heretofore practiced and understood. It is the intent and purpose of the parties hereto that this Agreement will promote and improve industrial and economic relationships in the bituminous coal industry and to set forth herein the basic agreements covering rates of pay, hours of work and conditions of employment to be observed between the parties, and shall cover the

MURRAY AMERICAN ENERGY          CASE NO. 16-31-18-074          THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                                               JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

employment of persons employed in the bituminous coal mines covered by this Agreement. Management will not abridge the rights of the Employees as set forth in this Agreement.

## Article IA--SCOPE AND COVERAGE

### Section (a) Work Jurisdiction

The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article. Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

### Section (d) Management of the Mines

The management of the mine, the direction of the working force and the right to hire and discharge are vested exclusively in the Employer.

### Section (i) Construction Work

All construction of mine or mine related facilities including the erection of mine tipples and sinking of mine shafts or slopes customarily performed by classified Employees of the Employer normally performing construction work in or about the mine in accordance with prior practice and custom, shall not be contracted out at any time unless all such Employees with necessary skills to perform the work are working no less than 5 days per week, or its equivalent for Employees working on alternative schedules. Provided further that where contracting out of such construction work customarily performed by classified Employees at the mine is permitted under this Agreement, such contracting shall be in accordance with prior practice and custom. Where contracting out is permitted under this section, prior practice and custom shall not be construed to limit the Employer's choice of contractors.

## ARTICLE XXIII – SETTLEMENT OF DISPUTES

### Section (h) Finality of Decision or Settlement

Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement. Settlements reached at steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer.

MURRAY AMERICAN ENERGY CASE NO. 16-31-18-074 THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

### Section (k) Prior Agreement

Any dispute and/or difference which as of the Effective Date of this Agreement is in the process of adjustment under the Settlement of Disputes section of the prior Agreement or any dispute and/or difference presented on or after the Effective Date of this Agreement which is based on the occurrence or nonoccurrence of an event which arose prior to the Effective Date of this Agreement shall be processed under the procedural provisions of this Agreement and shall be resolved under the applicable provisions of the prior Agreement. Decisions reached under this provision shall be final and binding. All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.

## ARTICLE XXVI – DISTRICT AGREEMENTS

### Section (b) Prior Practice and Custom

This Agreement supersedes all existing and previous contracts except as incorporated and carried forward herein by reference; and all local agreements, rules, regulations and customs heretofore established in conflict with this Agreement are hereby abolished. Except where abolished by mutual agreement of the parties, including the provisions of Article II G.10 of this Agreement, all prior practice and custom not in conflict with this Agreement shall be continued, but any provisions in any District or local agreements providing for the levying, assessing or collection of fines or providing for "no-strike," "indemnity," or "guarantee" clauses or provisions are hereby expressly repealed and shall not be applicable during the term of this Agreement. Whenever a conflict arises between this Agreement and any District or local agreement, this Agreement shall prevail.

Within six (6) months following the Effective Date of this Agreement, the Employers and all the UMWA International District Vice Presidents shall provide to the International Union and to BCOA, copies of all District agreements in their possession. All District agreements which are not provided to the International Union and BCOA during the first six (6) months of this Agreement may not be relied upon by any Employer or the Union in any grievance proceeding which may occur during the balance of this Agreement.

## BACKGROUND

The Harrison County Mine, one of the largest mines in the United States, was initially developed and put into operation by the Consolidated Coal Company (Consol) in the late 1960s, as the Robinson Run Mine. The Mine was included in the acquisitions from Consol by Murray Energy Corporation in December of 2013, along with four other underground mining operations in West Virginia. At the time of the filing of the instant Grievance, the mine employed approximately 308 hourly employees, represented for collective bargaining purposes by the United Mine Workers of America ("UMWA"), Local Union 1501, and covered by the National Bituminous Coal Wage Agreement of 2016 ("NBCWA").

MURRAY AMERICAN ENERGY        CASE NO. 16-31-18-074        THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                        JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

## STATEMENT OF FACTS

On February 5th, 2018, a contractor, American Conveyor Services ("the Contractor), began construction on a belt drive in a new section of the mine that was going to open. This belt drive was on the planning board of the Company for one year and three months lead time for construction. The classified employees loaded, transported, unloaded and spotted in order of use the major components of this new belt drive. The Contractor's employees then assembled these components by hoisting, bolting/welding into place, stabilizing and aligning them into a working beltline. The undisputed total work hours of the Contractor, including ancillary work, was four hundred (400) hours. It was stipulated that all previous construction, moving, assembling or repair of beltlines was performed by classified employees.

The Grievance below was properly filed and processed to Arbitration, listing five Grievants. A full and complete arbitration hearing was held on Thursday, May 10, 2018 at the Clarion Inn in Fairmont, West Virginia. All witnesses were sworn, the hearing was taped by the Arbitrator, all parties were afforded the opportunity to present evidence, exhibits and testimony, call, examine and cross-examine witnesses, make opening and closing statements, submit authority, state positions, make comments and arguments thereon.

---

Grievance No. CR-24-18
Regular Grievance – Article XXIII
Date of Foreman's Decision: 2-6-18   J. Coles

The Grievance:   Management is in violation of the National Bituminous Coal Wage Agreement of 2016.    Article(s) 1a and any other articles that may apply.   Starting on February 5th, 2018, Contractors started building belt drive in 7 North section. This has been our (union) work in the past.   We want this practice to stopped and be made whole in all ways.

Signature of Grievant(s)   /s/ Shannon L. Reigel          Date   3/8/18

---

On July 20, 2001, the following Grievance, No. CM-32-01, was settled by the Parties in writing and thereby became a part of their Agreement.

4

MURRAY AMERICAN ENERGY    CASE NO. 16-31-18-074    THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                    JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

---

Grievance No. CM-32-01
Name of Grievant(s) Class Action – Contractors        Name of Employer: Consol
UMWA Local No. 1501, District 31                      Mine #95

The Grievance:  Management is in violation of the National Bituminous Coal Wage Agreement of 1988.  Management has allowed and is continuing to allow outside contractors to perform our work.  We want this stopped.  We want the appropriate people paid all lost moneys and to be made whole in every way.

Signature of Grievant(s)  /s/ Carl Morris        Date  7/1/01

Settlement Statement:
The parties recognize that belt drive installation work customarily performed at the Robinson Run Mine is classified work.

For the UMWA:  /s/ Jack W. Rinehart 02-25-02
For the Employer:  /s/ Mark R. Miller

---

STIPULATED ISSUE - FINALITY OF SETTLEMENT.


## UNION POSITION

The February 25, 2002 settlement of the above Grievance (CM-32-01) reads as follows: **"The parties recognize that belt drive installation work customarily performed at the Robinson Run mine is classified work."**

This is clear and unambiguous language in which the parties agreed that belt drive installation, whether construction or repair and maintenance, is classified work.

Under Article XXIII - Settlement of Disputes, Section (h) - Finality of Decision or Settlement, *"Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceeding under this Article except by mutual agreement."*

**There was no mutual agreement in this case.**

*Settlements reached at steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer.*

**This settlement was in writing and signed by appropriate representatives of the Union and the Employer.**

MURRAY AMERICAN ENERGY     CASE NO. 16-31-18-074     THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                                        JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

**Remedy: The established four hundred (400) hours of work performed by outside contractors in building this belt drive shall be divided among the five (5) Grievants.**

## COMPANY POSITION

Under Article XXIII - Settlement Of Disputes, Section (h) - Finality of Decision or Settlement, it was resolved by United States District Judge Keeley that, under the NBCWA, the installing and constructing of new, never-before-used components to create something that did not exist prior to the work performed is "construction" work.

The construction of the west belt drive involved in this Grievance was the construction and installation of the components of a **"new, never-before-used"** belt drive in an area of the mine where nothing previously existed. The end result of the disputed work was "...**to create something that did not exist prior to the work being performed"**, work that was described as "construction" by Judge Irene M. Kelley in the U.S. District Court for the Northern District of West Virginia (the Monongalia County Coal Company and the UMWA).

Classified employees loaded, transported, unloaded and spotted, in order of use, all of the component parts of the belt drive. The installation of the belt drive was time-sensitive as it had to be in place in a timely manner to prevent the shutting down of the mine and the furloughing of employees, as well as for the economic integrity of the mine. All of the belt drive crew was working over eight (8) miles away performing necessary belt drive installation. This work, pursuant to industrial common law and the law of the industry, also constituted Article IA, Section (i) - Construction Work. Clearly, this work meets the Court's definition of construction work and under Article IA, Section (i), all employees were working no less than five (5) days per week and no economic damages were involved.

Even if the work is work "customarily performed" by classified employees, as conceded by the Employer, all five (5) Grievants were working at least five (5) days or the equivalent of five (5) days. It requires almost a month and a half from the date of hire to have a new employee in the mine working, and employment for such a short duration would not be reasonable. The Mine Manager believes that it is unconscionable to hire employees for short durations and then lay them off, because often they give up a job to return to the mine and end up furloughed again after completion of the construction project, without a job necessary to support their families. This is his reasoning for why more employees were not hired to perform the work required for the installation of the belt drive, instead of contracting it out.

## ARBTITRATOR'S OPINION

Black's Law Dictionary (4th Edition) defines "CONSTRUCTION" as: *"To build; put together; make ready for use."*

MURRAY AMERICAN ENERGY      CASE NO. 16-31-18-074      THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                          JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

Further case law added the following language to that definition: *"To adjust and join materials or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order."*

Construct is distinguishable from "maintain," which means: *"To keep up; to keep from change, to preserve."*

**These are strict constructionist's definitions and applications of the terms used may have different meanings and interpretations by the parties using such words.**

Both parties argued Article XXIII – Settlement of Disputes, Section (h) - Finality of Decision or Settlement, which states: *"Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement. Settlements reached at steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and Employer."*

The Union argued that this issue was settled on February 25, 2002, by a grievance settlement which states as follows:

> *"The parties recognize that belt drive installation work customarily performed at the Robinson Run Mine is classified work."*

The Employer argues that the District Judge's definition determined that the issue in this case, the construction of this belt drive, is new construction and therefore may be contracted out since all employees are working at least five (5) days per week.

Since both parties submitted Article XXIII, Section (h) – Finality of Decision or Settlement, as an inclusion in their presentation, the Arbitrator must find there is mutual agreement that this issue is subject to further proceedings and is properly before him.

**The issue is found to be:**

> *Is the installation of this belt drive new construction per Judge Keeley's decision and does the Grievance settlement in 2001 prevail?*

In due deference to the Honorable U. S. District Judge Irene M. Keeley's findings that the plain language of the NBCWA regarding construction versus repair and maintenance appears to be clear, it causes this arbitrator to wonder if the language of the CBA is that clear as to the meaning and application of what is "construction" and what is "repair and maintenance"; why has there been an estimated several hundred arbitrations involving construction versus repair and maintenance prepared and presented by literally hundreds of NBCWA educated and intelligent specialists whose jobs are to interpret and apply the contract? There has been a considerable expenditure of time and money by both parties in an attempt to develop a definition to resolve this dispute, and still arbitrations are being held concerning this issue.

MURRAY AMERICAN ENERGY          CASE NO. 16-31-18-074          THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                                                        JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

The definition of construction as *"new, never-before-used"*, as quoted in the Company position, is not the commonly accepted definition of construction derived by numerous arbitration decisions as it applies to the NBCWA. Otherwise, as stated by the Mine Manager, all work, such as moving long walls, constructing belt drives, and actually everything in the mine, would be new construction.

A strict constructionist interpretation and application of the word *"construction"*, as defined by Judge Keeley, could totally negate Article IA of the NBCWA - Scope and Coverage. However, many arbitrators found a different interpretation of the word "construction" as used and applied under the NBCWA.

> The Mine Manager stated that he believes every new operation in the mine could be considered "construction". As they close down one section they have to construct a whole new one and this lead time is usually over a year and three months, and is therefore new construction.

> In contrast, an eminent Arbitrator stated: "The production of coal" is too broad of a brush to consider as under this interpretation even the Arbitrator is covered in the production of coal." He was referring to the production of coal as an all-inclusive, totally protected activity.

There is classified work, which is protected work under the labor agreement, and included in this protected work is a varying number and type of construction work dependent upon prior practice and custom at that particular mine. Building of cribs may be considered classified work at one mine due to prior practice and custom not subject to being designated as construction and is a totally protected job, while in another mine the building of cribs may be considered within the meaning of construction per Judge Keeley. There are many exceptions that are mixed practices and subject to interpretation. One may not negate the prior practice and custom of work previously performed by now designating it as new construction or just construction.

This Arbitrator cannot conceive that the drafters of the NBCWA would have included language which in effect would reduce the classified membership and permit work to be contracted out, which has been protected work (classified) since John L. Lewis was a party to the first contract.   In this case, as the Grievance Settlement of Grievance No. CM-32-01 between the parties confirmed in writing, belt drive installation work at this Robinson Run Mine is **classified work,** therefore, it does not matter whether it is considered construction or repair and maintenance. This grievance settlement does not include any exceptions for construction work of new belt drives; if construction was an exception, it should have been included in the settlement.

Judge Keeley's decision did not involve the installation of new belt drives and no evidence was presented to her involving a prior grievance settlement or the prior practice or custom of the installation of belt drives in this mine. Judge Keeley's decision was based upon the Supreme Court's Trilogy, where she found that

8

MURRAY AMERICAN ENERGY    CASE NO. 16-31-18-074    THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                      JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

the arbitrator's decision did not draw its essence from the collective bargaining agreement and was based upon the arbitrator's own notion of right and wrong. Judge Keeley did not find that the arbitrator exceeded the scope of her authority, that her decision was arbitrary or capricious or that it was in conflict with public interest by undermining the enforcement of the agreement. **The Judge has no authority to question or change the fact founds by the arbitrator.**

This Arbitrator is not going to address the position of the Company that, pursuant to *"industrial common law"* and *"the law of the industry"*, the work associated with six additional required projects listed which was being performed by the fully employed, classified employees at that time also constitutes *"construction work"* under the NBCWA, as it is not germane to this case. It was stipulated that the employees were working no less than five (5) days per week.

The *"construction"*, installing and/or moving of belt drives is clearly established by numerous arbitrations to be not only *"work of the type customarily related to the production of coal"* but in this case, work that has been exclusively been performed at this mine by classified employees. In this case the classified employees performed a significant portion of installing the West Belt Drive by loading, transporting, unloading and spotting, in order of use, the boom drive, rock box and transfer, frame and sub-frame, installation of drive rollers and snub rollers, motors and pedestals. All these segments were placed in order of assembly, and the contractor installed, constructed, assembled or put them together to establish a functioning belt drive in the new section.

Evidence suggests that the mine owner has developed independent mine construction, repair and maintenance contracting companies to perform the subcontracting as a service for mines. This causes the Union to suspect a conflict of interest in the Company's decisions to sub-contract or use classified employees to perform construction or repair and maintenance work. This is not of concern to this Arbitrator in the making of his decision in this case as it is stated as a matter of record to confirm the Union's position in this arbitration.

In the production of coal and the operation of a mine, there are "emergencies" which occur or in some cases, economic decisions are made, which result in the Company violating the labor agreement. In this case, the Company alleges that if it did not have this belt drive in operation as scheduled, it would have resulted in a temporary interruption in the production of coal and the loss of work for the classified employees. However, the Company had a year and three months lead time before the installation of this belt drive. It is the responsibility of the Company to make economic decisions and some of these decisions may result in a violation of the Agreement. There is no provision in the Agreement which permits a violation for the "economic integrity of the mine". The consequences of a contract violation may be considered the cost of doing business by some companies. Every experienced Arbitrator has been faced with times when the Company finds it more economical to violate the agreement and acts accordingly. I have experienced cases where, by accepted practice, the Company violates a specific provision of the labor agreement and repeatedly pays the grievants entitled to that work. In one such operation it was advantageous for the Company to pay the grievants rather than shut down the operation on several occasions.

MURRAY AMERICAN ENERGY CASE NO. 16-31-18-074 THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE  JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

In this case, the panel was exhausted and the Company did not consider (and was not required to) using qualified employees from a sister mine's panels to perform the work for installation of the belt drive. The use of these panel employees could shorten the Mine Manager's timeframe of ninety (90) days from date of hire until the employee was in the mine. It would not require the year and three months lead time available to the Company to prepare for this belt drive installation to have these panelists or new hires in the mine. The contract does not provide for the Mine Manager to make the determination whether the panelist is offered the opportunity, accepts or refuses recall no matter how unconscionable, unreasonable, unfair or well-intended the Mine Manager feels this recall might be to this person.

The Company position was that the use of the Contractor was necessary to construct this belt drive that needed to be completed within the allotted timeframe. The Company may develop a self-imposed schedule for completion of a project but that does not give it the right to negate or change its contractual obligations to achieve its projected results.

Article I A – Scope and Coverage, Section (i) - Construction Work, states:

> "All construction of mine or mine related facilities including the erection of mine tipples and sinking of mine shafts or slopes customarily performed by classified Employees of the Employer normally performing construction work in or about the mine in accordance with prior practice and custom, shall not be contracted out at any time unless all such Employees with necessary skills to perform the work are working no less than 5 days per week, or its equivalent for Employees working on alternative schedules. Provided further that where contracting out of such construction work customarily performed by classified Employees at the mine is permitted under this Agreement, such contracting shall be in accordance with prior practice and custom. Where contracting out is permitted under this section, prior practice and custom shall not be construed to limit the Employer's choice of contractors."

This provision of the contract relates to construction of new facilities and is specific in its application to classified employees of the Company who normally perform construction work. Belt men do not normally perform construction work but if belt drive installation is considered construction, then they do normally perform this type of construction.

An employer may not furlough, as in this case, ninety (90), classified employees and when the recall panel is exhausted, it works the retained employee five (5) days a week with offers of unlimited overtime and then use contractors to perform work which has customarily and exclusively been classified work. An extension of this procedure could result in the elimination of most classified employees and nearly all production of coal being performed by contractors.

10

MURRAY AMERICAN ENERGY      CASE NO. 16-31-18-074      THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                        JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

Belt drive construction and maintenance is work normally performed by classified employees. The installation of belt drives is covered under Article I A – Scope and Coverage, Section (a) – Work Jurisdiction, and is actual work in the production of coal and has never previously at this mine even been considered as "construction work". Classified employees are the only ones who perform this work. This is the accepted prior practice and custom for years under this same language and between the same parties. Therefore, the contracting out of this work without mutual agreement of the parties is a violation of Article I – Enabling Clause, and Article1 A – Scope and Coverable, Section (a) –Work Jurisdiction, and contracting out exceptions are not applicable.

## FINDINGS

It is found that the issue of the building, installation and moving of belt drives is a totally protected activity at this mine per the Grievance Settlement dated February 25, 2002, in Grievance No. CM-32-01.

The Company violated Article XXIII - Settlement of Disputes, Section (h) - Finality of Decision or Settlement. The Company is not permitted to continue pursuing an issue settled in the grievance procedure on further appeal to the Courts.

There is no violation of Article XXVI – District Agreements, Section (b) - Prior Practice and Custom, as no conflict with the NBCWA is found. There is no prior panel obligation, therefore, Article II, G.10 of the NBCWA is not applicable. All prior practices and customs not in conflict with this Agreement shall be continued.

From evidence and testimony, it has been found that the prior practice of installing belt drives in this mine has been exclusively classified work. By the signed Grievance Settlement in Grievance No. CM-32-01, this practice shall continue and cannot be contracted out.

This Arbitrator made his findings and award based upon full and careful consideration of all the evidence, testimony, arguments and authorities submitted; the total record and all relevant legal and contractual considerations; the contract, considered specifically and as a whole; existing common law of the particular work place and industry and other pertinent circumstances; and the previous grievance settlement of this same issue. This includes his rendering over five hundred bituminous coal wage agreement arbitration decisions in seven states over a nearly fifty-year period.

**Remedy:** It is argued that all employees were working five (5) days a week and therefore suffered no damages. Since the building, installation and moving of belt drives is found to be protected classified work and not **construction work per se**, Article 1 A, (l) "...*Employees with necessary skills to perform the work are working no less than five (5) days..."* is therefore not applicable.

The contract may not be violated with impunity and with no redress; otherwise, the provisions of the contract have no meaning and there is no reason to have an agreement. If quid pro quo term of the contract such as the no-strike clause was violated, the Company would seek redress. One may not select the provisions of the agreement one wishes to violate or follow. Violations require a remedy. Repeated

11

MURRAY AMERICAN ENERGY          CASE NO. 16-31-18-074          THOMAS L. HEWITT, ARBITRATOR
HARRISON COUNTY MINE                                                                        JUNE 7, 2018
UMWA, DISTRICT 31
LOCAL UNION #1501

violations require repeated, if not increasing, remedies. In this case, the Union lost classified work to which their members were entitled. The work has been performed by contractors, is lost to the bargaining unit and the "bell cannot be un-rung". An arbitrator may fashion a reasonable remedy. One may award the lost work to the Union or Union members and in some cases this Arbitrator awarded it to charity.

## AWARD

For the reasons stated above the Arbitrator finds: **The grievance is granted, as is the relief requested.**

**Relief:** Each of the five (5) Grievants have suffered the loss of the opportunity to perform the West Beltline work and shall each be paid eighty (80) hours[1] of pay at their straight time rate. Benefits which are funded by an hourly rate calculation are granted for equivalent hours.

Issued at Latrobe, Pennsylvania, this 7th day of June, 2018.

*Thomas L. Hewitt*
Thomas L. Hewitt, Arbitrator

---

[1] Four hundred (400) hours divided by five (5) Grievants.

12