IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THE HARRISON COUNTY
COAL COMPANY,

       **Plaintiff/Counter-
       Defendant,**

v.                               **Civil Action No. 1:18-cv-138
                                    (Judge Kleeh)**


UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION, and
UNITED MINE WORKERS OF AMERICA,
LOCAL UNION 1501,

       **Defendants/Counter-
       Claimants.**


**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff and Counter-Defendant, The Harrison County Coal Company ("Plaintiff"), along with the Defendants and Counter-Claimants, the United Mine Workers of America, International Union, and the United Mine Workers of America Local Union 1501 (together, the "Union" or "Defendants"). For the reasons discussed below, the Court denies Plaintiff's motion and grants Defendants' motion.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

## I.    PROCEDURAL HISTORY

On July 2, 2018, Plaintiff brought this action against Defendants, seeking to vacate an arbitration award. The Honorable Irene M. Keeley, United States District Judge, ordered the parties to submit a joint stipulated record, cross motions for summary judgment, and response briefs. Defendants filed an Answer and Counterclaim against Plaintiff. The case was transferred to the Honorable Thomas S. Kleeh, United States District Judge, on December 1, 2018. The parties have filed their cross motions for summary judgment, which are now ripe for consideration.

## II.    BACKGROUND

Plaintiff operates the Harrison County Mine, formerly the Robinson Run Mine, an underground coal mine in West Virginia. Defendants represent Plaintiff's bargaining unit employees for purposes of collective bargaining. The collective bargaining agreement that governs this relationship is the 2016 National Bituminous Coal Wage Agreement ("NBCWA"). The NBCWA establishes work jurisdiction of union-represented employees and provides restrictions on Plaintiff's ability to contract out this work.

### A.    The NBCWA

The NBCWA provides the following regarding "Work Jurisdiction":

> The production of coal, including removal of
> over-burden and coal waste, preparation,
> processing and cleaning of coal and
> transportation of coal (except by waterway or
> rail not owned by Employer), repair and
> maintenance work normally performed at the
> mine site or at a central shop of the Employer
> and maintenance of gob piles and mine roads,
> and work of the type customarily related to
> all of the above shall be performed by
> classified Employees of the Employer covered
> by and in accordance with the terms of this
> Agreement. Contracting, subcontracting,
> leasing and subleasing, and construction work,
> as defined herein, will be conducted in
> accordance with the provisions of this
> Article.
>
> Nothing in this section will be construed to
> diminish the jurisdiction, express or implied,
> of the United Mine Workers.

ECF No. 10-1 at 10-11. The agreement also distinguishes between

(1) Repair and Maintenance Work and (2) Construction Work. The

"Scope and Coverage" of Construction Work is as follows:

> All construction of mine or mine related
> facilities including the erection of mine
> tipples and sinking of mine shafts or slopes
> customarily performed by classified Employees
> of the Employer normally performing
> construction work in or about the mine in
> accordance with prior practice and custom,
> shall not be contracted out at any time unless
> all such Employees with necessary skills to
> perform the work are working no less than 5
> days per week, or its equivalent for Employees
> working on alternative schedules.
>
> Provided further that where contracting out of
> such construction work customarily performed
> by classified Employees at the mine is

> permitted under this Agreement, such
> contracting shall be in accordance with prior
> practice and custom. Where contracting out is
> permitted under this section, prior practice
> and custom shall not be construed to limit the
> Employer's choice of contractors.

Id. at 13.

The NBCWA provides the following regarding resolution of

disputes:

> The United Mine Workers of America and the
> Employers agree and affirm that, except as
> provided herein, they will maintain the
> integrity of this contract and that all
> disputes and claims which are not settled by
> agreement shall be settled by the machinery
> provided in the "Settlement of Disputes"
> Article of this Agreement . . . , it being the
> purpose of this provision to provide for the
> settlement of all such disputes and claims
> through the machinery in this contract and by
> collective bargaining agreement without
> recourse to the courts.

ECF No. 10-2 at 58. Finally, it states the following about

settlements:

> Settlements reached at any step of the
> grievance procedure shall be final and binding
> on both parties and shall not be subject to
> further proceedings under this Article except
> by mutual agreement. Settlements reached at
> steps 2 and 3 shall be in writing and signed
> by appropriate representatives of the Union
> and the Employer.

Id. at 55.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

**B.   The Dispute**

The dispute leading to this litigation involves work performed at the Harrison County Mine on February 5, 2018. ECF No. 1 at ¶ 8. On that day, Plaintiff hired contractors to install a new belt drive at the mine. Id. On March 8, 2018, the Union filed a grievance (the "Grievance") on behalf of five (5) of its members (the "Grievants"), alleging that Plaintiff violated the NBCWA by hiring a contractor to perform classified work. Id. The Union alleged that "[t]his has been our (union) work in the past." ECF No. 10-4 at 7. The Union requested that the "practice [be] stopped" and that the Union "be made whole in all ways." Id.

**C.   The Arbitration Award**

On May 10, 2018, the parties presented evidence at a hearing in front of Arbitrator Thomas L. Hewitt (the "Arbitrator"). ECF No. 1 at ¶ 9. The Arbitrator issued a Decision and Award (the "Award") on June 7, 2018, in which he sustained the Grievance. Id. ¶ 10. The Award includes a Statement of Facts, a summary of the parties' positions, the Arbitrator's Opinion, and his Findings. See ECF No. 10-4 at 2–15.

In the Award, the Arbitrator discussed the classification of the belt drive installation because its classification impacts Plaintiff's ability to hire contractors. See id. at 9–15. He

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

analyzed different ways to define "construction" work, including the "strict constructionist" definition advocated for by Plaintiff. Id. In 2017, Judge Keeley issued a decision in Monongalia County Coal Co. v. UMWA, 234 F. Supp. 3d 797 (N.D.W. Va. 2017) (the "2017 Decision"), in which she applied what the Arbitrator describes as the strict constructionist definition. Id. at 11. The Arbitrator rejected Plaintiff's argument, finding that "new, never-before-used" is not the "commonly accepted definition of construction" applied by arbitrators. Id. Further, he said, a "strict constructionist interpretation and application" of the term "could totally negate Article IA of the NBCWA." Id.

The Arbitrator noted that Article XXIII of the NBCWA provides that settlements "shall be final and binding on both parties . . . ." Id. at 10. On February 25, 2002, the parties entered into such a binding settlement (the "2002 Settlement"): "The parties recognize that belt drive installation work customarily performed at the Robinson Run Mine is classified work." Id. The Arbitrator wrote that mines differ in what types of construction work they define as "classified work." Id. at 11. For instance, "Building of cribs may be considered classified work at one mine due to prior practice and custom not subject to being designated as construction . . . , while in another mine the

building of cribs may be considered within the meaning of construction per Judge Keeley." Id. Here, he wrote, belt drive installation work at the Robinson Run Mine (Harrison County Mine) is classified work under the 2002 Settlement, and "it does not matter whether it is considered construction or repair and maintenance." Id.

The Arbitrator found that Plaintiff violated the NBCWA based, in part, on the 2002 Settlement defining belt drive installation as classified work: "[I]nstalling belt drives in this mine has been exclusively classified work . . . and cannot be contracted out." Id. at 14. He described it as a "totally protected activity" via the 2002 Settlement. Id. The Arbitrator found that because belt drive installation was clearly defined in the 2002 Grievance as classified work, Article 1A(i) of the NBCWA is not applicable, and "the building, installation and moving of belt drives is . . . not construction work per se . . . ." Id.

The parties stipulated that the employees were working no less than five (5) days per week. Id. at 12. Still, the Arbitrator awarded each Grievant "eighty (80) hours of pay at their straight time rate." Id. at 15. This was based on four hundred (400) total hours of work by the contractor, divided among the five (5) Grievants. Id. at 7, 15. He wrote that "[t]he contract may not be

violated with impunity and with no redress; otherwise, the provisions of the contract have no meaning and there is no reason to have an agreement." Id. at 14. He also noted that "[v]iolations require a remedy." Id. The Arbitrator found that "the Union lost classified work to which their members were entitled." Id. at 15. He found that "[t]he work . . . is lost to the bargaining unit and 'the bell cannot be un-rung.'" Id. Finally, he wrote that "[e]ach of the five (5) Grievants have suffered the loss of the opportunity to perform" the belt drive work. Id.

**D.   Parties' Contentions**

Plaintiff now argues that the Court should vacate the Award because it fails to draw its essence from the contract. See ECF No. 11. This was construction work, Plaintiff argues, and contracting for construction work is permissible under the NBCWA if all protected employees are working no less than five (5) days per week. See ECF No. 1 at 5–6. Plaintiff relies on the 2017 Decision, in which Judge Keeley defined construction work, in part, as "work which brings something new to the mine." Id. (citing 234 F. Supp. 3d at 806). Here, Plaintiff argues, Plaintiff presented evidence at the arbitration proceeding that this Grievance involved "construction of a new, never-before-used belt drive in an area of the mine where there was no prior activity." Id. at 5.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Defendants argue that the Arbitrator considered the evidence presented and the common law of the shop. See ECF No. 12-1. They believe the Award is well-reasoned, final and binding, and entitled to deference by the Court. Id.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

## IV.   GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991). This is because "[t]he parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and 'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] has "emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference.

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593–54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose a punitive award or punitive damages" unless a provision in the collective bargaining agreement provides for them. Island Creek, 29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). Notably, under Fourth Circuit precedent, compensation for a loss of union work can be permissible. See Cannelton, 951 F.2d at 594 (writing that if the arbitrator "ordered monetary damages to compensate employees for work they were entitled to perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work"). In deciding whether an award is punitive or whether it draws its essence from the agreement, courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators'

11

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

reasoning to determine whether the arbitrator has applied "his own brand of industrial justice . . . ." Cannelton, 951 F.2d at 594.

In reviewing arbitration awards, courts "must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly." Id. at 595; see also Upshur Coals Corp., 933 F.2d at 231 (writing that "[l]abor arbitration serves the important goal of providing swift resolution to contractual disputes"). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." Misco, 484 U.S. at 30.

As the Fourth Circuit has written, "Above all, we must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). In this determination, the Court considers "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits."

<u>Id.</u> Furthermore, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." <u>Norfolk Shipbuilding & Drydock Corp. v. Local No. 684</u>, 671 F.2d 797, 799–800 (4th Cir. 1982). The common law, as described above, does not allow the arbitrator to impose punitive damages unless they are provided for in the agreement. <u>See</u> <u>Cannelton</u>, 951 F.2d at 594.

## V.    <u>DISCUSSION</u>

Judge Keeley's guidance on the definition of construction work is persuasive to this Court. In the 2017 Decision, she examined whether work was construction work or repair and maintenance work. Just as it does here, the answer to the question impacted Plaintiff's ability under the NBCWA to contract out the work at issue. She wrote the following:

> To "construct" means "[t]o form by assembling or combining parts; build. To "maintain," on the other hand, has two plausible definitions that could apply to this case: either "[t]o keep in an existing state; preserve or retain" or "[t]o keep in a condition of good repair of efficiency."      As . . . arbitrational precedent . . . confirms, . . . the common usage of "repair and maintenance" refers to the upkeep of equipment, machinery, or existing facilities.

<u>Monongalia Cty. Coal</u>, 234 F. Supp. 3d at 803–04.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Judge Keeley noted that "numerous arbitral decisions" supported this definition. Id. at 804. She cited an arbitral decision that found that "construction work . . . is work which brings something new to the mine which had not existed prior to the performance of the work in question." Id. (citing Consol-McElroy Coal Co. v. UMWA Local Union 1638, Dist. 6, Case No. D-971AI-9 (Dec. 3, 1997) (Nicholas, Arb.)). Judge Keeley found that by ignoring this arbitral precedent and finding that the work at issue was not construction work, the arbitrator substituted her own notion of industrial justice. Id. at 806.

Here, like in the 2017 Decision, the parties agreed that the Grievants were working no less than five days per week. However, this case is also different from the 2017 Decision because no evidence was considered in the 2017 Decision of a binding prior settlement providing that the work at issue was classified work. Here, the 2002 Settlement provides, "The parties recognize that belt drive installation work customarily performed at the Robinson Run Mine is classified work." ECF No. 10-4 at 10.

At the Harrison County Mine, the parties have agreed separately, via the 2002 Settlement, that belt drive installation work is classified work. At that time, the 2002 Settlement became part of the NBCWA. Thus, by focusing on the 2002 Settlement, the

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Arbitrator was not ignoring contractual language or applying his own notions of industrial justice. Recognizing the Court's extremely limited role in reviewing labor arbitrators' decisions, the Court finds that the Arbitrator's decision draws its essence from the Agreement. At a minimum, he "arguably" applied the contract and acted within the scope of his authority. The Court finds that the Arbitrator did his job, and it will refrain from discerning whether he did it correctly or whether the Court would have done it differently.

As to the damages awarded, the Court reaches the same conclusion. While certain aspects of the Award weigh in favor of finding that it is punitive and does not draw its essence from the NBCWA (i.e. the Arbitrator's comments that "[t]he contract may not be violated with impunity and with no redress" and "[v]iolations require a remedy"), other aspects of the Award indicate that it was compensatory in nature. For instance, the Arbitrator found that "the Union lost classified work to which their members were entitled." Id. at 15. He also wrote that "[t]he work . . . is lost to the bargaining unit and 'the bell cannot be un-rung.'" Id. He discussed the Grievants' "loss of the opportunity" to do the work at issue. Id. Further, he calculated his award based on the hours of work performed by the contractor and divided it among the

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 11], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Grievants. Id. at 7, 15. This indicates a desire by the Arbitrator to compensate the Union for lost work, and the amount awarded stems from the breach itself. As discussed above, if an arbitrator "order[s] damages to compensate employees for work they were entitled to perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work." See Cannelton, 951 F.2d at 594. Pursuant to the 2002 Settlement, the Union employees were entitled to perform the belt drive installation work. It is clear that compensating the Union for this lost work was the Arbitrator's goal in issuing his Award.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **DENIED** [ECF No. 11], and Defendants' Motion for Summary Judgment is **GRANTED** [ECF No. 12]. The arbitration award is **CONFIRMED**. It is further **ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this memorandum opinion and order to counsel of record.

DATED: September 18, 2019

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE